Good morning. May it please the Court, Jenny Morawetz appointed to represent the petitioner Juan Escamilla. I'd like to reserve one minute for rebuttal and I'll watch the clock. Okay, thank you. Procedural due process required that the immigration judge give Escamilla more than 34 days to gather evidence of his 34 years' worth of ties to the United States. Had Escamilla been given more time to gather evidence in support of his application for cancellation of removal, he would have been able to present letters and testimony from family members, former employers, and other individuals. But because he could not connect with his family from detention in that short window of time, Escamilla had to proceed with no evidence to support his testimony. At the conclusion of the hearing, the immigration judge relied on the lack of supporting evidence, the evidence Escamilla did not have a sufficient opportunity to obtain to deny Escamilla's application. In doing so, the immigration judge violated Escamilla's right to a full and fair hearing. By affording Escamilla just over one month to gather evidence, the immigration judge prevented Escamilla from reasonably presenting his case. In Cruz Rendon v. Holder, this Court found a petitioner was prevented from reasonably presenting her case when she was not given sufficient time, like Escamilla, to gather evidence in support of her application for cancellation of removal. The Court described the 31-day and 29-day continuances in that case as exceedingly short and found it unsurprising that the petitioner was unable to marshal significant evidence. Escamilla had even less time than the petitioner in Cruz Rendon, and unlike Cruz Rendon, was representing himself from detention. Escamilla's application, which was submitted on March 19th, contained a request for time to gather evidence. At the April 11th hearing, he made clear that there was evidence that would support his application, but that he was having trouble contacting his family from detention to get their help collecting this evidence. Can I ask you how, so this is a very troubling case because he was picked up, obviously has difficulty with English, has no way of contacting, I mean, did he have his cell phone, did he have their numbers, it seemed like the family was separated, he was looking for work. No, Escamilla testified that he did not have his cell phone while in detention and did not in the age of technology have his family members' phone numbers or addresses committed to memory. He had lost the phone, he'd left it behind. Left it at his prior address, that was what he testified, yes. So how was he supposed to contact his family? I mean, how does it work, how does detention work? I mean, did he have access to a telephone? He testified at the April 11th hearing that he had tried to enlist the help of some of his fellow detainees to look up his family members' phone numbers on 411. Presumably he could have attempted to write letters to addresses as best he could recollect. He also testified that he didn't believe his family would be looking for him because they thought he was in the process of relocating to Las Vegas and he'd only been in detention for a short time. So what should the I.J. have done here? Is this an I.J. error? Yes. Okay, so what should the I.J. have done? I think when at the April 11th hearing, when Escamilla made clear that there was evidence out there that would support his application, but he was having trouble collecting it, the I.J.'s duty to ensure the record was fully developed for the benefit of a pro se applicant meant that the I.J. should have provided Escamilla with a reasonable amount of time. So the I.J. says on ER 84, so I just want to be clear, if you want time, time, but I don't know if it's going to be any good, said Mr. Escamilla. Let's do it right now, judge. Well, if you want time, I'll give you time. The thing is, if you want the time, I'll give you another opportunity, says it again. Now you said that three times. Escamilla, let's go forward. Okay, I want you to understand. You've had the opportunity. Do you understand that? Yes. Was Escamilla working through an interpreter? No. And you're correct that Escamilla indicated initially that he would proceed. Not just initially, but repeatedly. Four times. And the judge says to him, again on page 24, do you want to get time? By my count, that's at least four times he said to him, do you want additional time? The record also shows that he was confused about the proceeding. He thought he could appeal. He was feeling helpless. He couldn't figure out how to contact his family. He was worried that his family might not be looking for him. He was concerned about imposing on his family because they were. But I'm trying to understand. You told us that this was IJ error. I'm trying to understand what mistake did the IJ make when he's asked him four times if he wants additional time. By the time, then he reschedules it for another 11 days later, right? Right. To the 22nd. At the beginning of that hearing, he asks him, are you ready to go forward? Yes. Do you have witnesses? No. Okay. What more is an IJ supposed to do in these circumstances? At the April 11th hearing, the IJ should have taken into account the difficulties that Escamilla was facing in detention, given him more than 11 days. An 11-day continuum. And it's a violation of the Constitution if he doesn't do so. Even though Escamilla has said, let's go forward, I'm not going to be able to get in touch with them. I'll give you everything I've got. Let's do it. Is it like a plain constitutional error? What's the mistake? By failing to fulfill his duty to ensure the record was fully developed for the benefit of a pro se applicant, the immigration judge sees me. And is there a case that should have told him that he should have given him 21 days instead of 11 days? Well, in Cruz Rendon, I mean, this Court found that a 29-day or 31-day continuance, both of those were exceedingly short. And in that case, the petitioner was represented by counsel. In this case, the petitioner was in detention and did not have the benefit of legal counsel to get help gathering supporting evidence. So as I understand it, after he was ordered deported, he did try to appeal this, and then he was in detention, and then he just asked to be let go and deported? So after the immigration judge ruled in April of 2013, he appealed to the BIA. The BIA's decision was August of 2013. And then he filed a petition for review in this Court. And then after having been, you know, initially briefed the case per se, and after having been in detention for a year and a half, asked this Court to lift the stay of removal because he didn't want to be in detention anymore and thought being in Mexico would be better. Prejudice is, he's alleging he was prejudiced by not enough time. Where has he stated what he would have been able to produce that would have convinced the hearings officer here, that person, to take another conclusion? What is it specifically, other than generally I'm prejudiced? What is the specific prejudice? So at A.R. 82 and 83, he testified that he believed that there were former employers who would either, you know, testify or write letters that he had done good work. You know, family members, other families with whom he had lived, could submit letters or testimony. He hadn't specified these people at the time it was to be adjourned. Why had he? Yes. At the April 11th hearing at A.R. 82 and 83, he told the immigration judge that he believed that there were individuals who would submit letters and testimony on his behalf. He didn't say who they were, though. No, but he, I don't believe he was required to. I mean, he did testify at the hearing, you know, that he had two brothers who were lawful permanent residents. His mom had lawful permanent resident status. His sister was a U.S. citizen. And if, you know, he could get in touch with his mom, that she could assist with gathering evidence from these individuals or former employers. What do we make of the fact that he apparently had indicated he had no criminal history, but, in fact, he does have a criminal history? Wasn't there some credibility issues here that were weighed in? The immigration judge found he was credible, and this Court accepts the immigration judge's credibility determination. Even though he definitely made an error in saying, I have no convictions? I mean, he eventually testified. He admitted that he had been convicted of the possession offenses, and there was, it seemed like, some confusion, perhaps, about the past traffic offenses. Not the meth infractions? No, but he admitted the allegations in the notice to appear, which was that he had been convicted of those offenses. If there's no further questions, I'll reserve my remaining time. All right. Thank you. May it please the Court, Jeremy Byland, on behalf of the respondent. We don't believe that Petitioner could prevail on his due process claim. He hasn't showed that his proceedings were so fundamentally unfair that he was denied a reasonable opportunity to present his claim. So to prevail on his due process claim, we have to show that he had a due process right, that that right was violated, and that prejudice resulted to him from that violation. So he's relying on his right to have a fundamentally fair hearing, but we don't think he can show a violation. When he's in detention, what kind of access does he have? Unlimited access to a phone? Does he have access to a computer? He does have, I don't know about unlimited, Your Honor. He does have access to a phone. He does have access to a computer. He did write his appeals of the board on a computer. I think one of the big fallacies in this case. Did the computer have Internet? I mean, was he able to text or? So he did not have a cell phone, so I think texting probably would be out of the question. I'm not sure about e-mail. Was the computer, did it have Internet? Was it connected? I'm not sure, Your Honor. I just know that he did write his appeal to the board on a computer. Right, but that has nothing to do with access to the outside world, to have Internet or some sort of thing. That's right. And how often was he provided access to the phone? We don't know, Your Honor, but I think the big fallacy in this case is he didn't know his family's address. But if you look at page 176 of the record in this cancellation removal application, he puts his family's address there. So he could have written a letter to his family at any point. And I think the flavor you get when you read the transcripts is a similar flavor to what you look at in the criminal docket. If you look in the criminal docket, we just have failure to appear after failure to appear. He has to go back to jail after a violation of probation because he won't provide documentation of a drug program he was supposed to attend. And we have a similar thing here. He just was sitting on his rights, not writing his letters and not getting the aid he needed. I think that the judge, the immigration judge, was actually being quite conscientious in the development of the record. On pages 83 through 87 of the record, Petitioner, on four different occasions, said that he didn't want or expressed an inclination to go forward with the hearings, indicating he didn't want a continuance. But the immigration judge would not be dissuaded and continue to press him until he finally accepted a continuance. Now, granted that continuance was only 11 days, but in that final hearing, Petitioner never asked for another continuance and indicated in his testimony that he thought that he was not going to be able to get the documentation. And I think what's also, if you look in his testimony to the immigration judge, he talks about how he doesn't think his family can help him or will help him with the financial load and that they have their own lives and that they're not going to come help them. So if you're in the immigration judge's position in trying to act reasonably and trying to develop this record, I think the immigration judge was listening to what Petitioner was saying. He still gave a continuance, even though Petitioner indicated he didn't want it. And then in the final hearing, he went forward with the case because Petitioner indicated he wasn't going to be able to get this documentation. And I think any sort of Breitrein rule that we have to have long continuances would be detrimental to some criminal aliens who actually do want to expedite their hearings. Well, this is a particularly short continuance, 11 days. I mean, getting a letter mailed and having it delivered could take 11 days. But we have a 41- Out of state. Yes, Your Honor. So we have a 41-day period here from when he was told to gather evidence to when the final hearing occurred. And I do agree that, like I said, we do have a short period of time, but I don't think it was inordinately short to get a letter back. So does his criminal history rise to the level where he would have been ineligible for cancellation of removal? No, Your Honor. This is a purely discretionary denial of cancellation. So we're not arguing that there was an aggravated felony involved, which would render him ineligible. Crime of violence or moral turpitude or anything like that? So it's a mere discretionary denial. So could he move to reopen proceedings and get evidence in? He presumably could provide all that evidence to the board. And I guess the letter he had he could have provided to the board on initial appeal, and I'm uncertain as to why he didn't do that. How would the board look at that evidence? Would they say it was available to him at the time and so we're not going to reopen? Because it's not new evidence. I can't really opine. If he could show a timeline of when he was receiving the letters back, then he might be able to establish that he didn't have access to it at the time of the final hearing. But if he had, like, an envelope showing when he sent his initial letter and that they didn't come back until after. But I guess the other issue, the other thing the board would probably look at, is the fact that he was telling the immigration judge that he wasn't going to be able to get the evidence. Yeah, I know. And I think it's a troubling case because, you know, like the lack of hope and ability to reach anyone is troubling. You know, you go into, I mean, I don't know if you've been to a detention center. I haven't. So I can't speak to it. I'm planning to visit one soon. But, I mean, as I understand it, they're overcrowded. There's nothing provided. They don't have lawyers. They don't have resources. And he came straight from jail. So it's just a very troubling situation. I guess to speak to his being unrepresented, he was provided a list of counsel, declined to take counsel, and said he would represent himself. On the interpretation issue for Spanish versus English, he did say English was his best language to communicate in. We do have a short time period here. But, again, looking at what he told the immigration judge, I just don't know that we can get to due process violation here. I think we might have a different case if he was telling the immigration judge, hey, I need more time, I need more time, I need more time. It was denied. If you look at Cruz Rendon, in Cruz Rendon there was a continuous denial. So there was a request. And there was also trying to get information from Mexico, which would take more time than get information, say, from in-state. And then I just wanted to talk about the letter for a minute that he attached to his informal brief. We believe that's extra record evidence, and under Fisher v. INS, the court shouldn't reach it. The two cases cited by appointed counsel I think actually refer to what's outside the record that is available to the board, which is actually quite a different situation than what's available to the court. So the board is, if the board is presented with extra record evidence, then they can have the ability to either remand the case if it's still open, or they have sui sponte power to reopen if the case is closed. But that's distinguishable from this court looking at extra record evidence because in the en banc decision in Fisher v. INS, it's only the record the court should look at. And the other thing about the letter is it actually confirms the fact, even if you were able to look at it, it actually confirms the fact that he had his family's true address from the very beginning. You want us both to look at it and not look at it? I would like you not to look at it, Your Honor, but if you do. Then don't argue it. Any alternative. No, don't argue it if you don't want us to look at it. So we just don't think that there is a due process violation here, and because there's not, either the case should be dismissed for lack of jurisdiction or should be denied if the constitutional claim is colorable but fails. All right. Thank you. Thank you. And you can have a minute more. I'd like to address three points that were raised. The first, my opposing counsel suggested that Escamilla knew his family member's addresses all along. He did list an address, I believe, for his sister on his application for cancellation of removal. I think he listed 882 as the street number. And then during the removal proceedings at AR-99, he testified that he thought it was 802, but he wasn't sure. And then ultimately it did turn out to be on the letter that was attached to his pro se opening brief to be 882. So it seems that he was simply having some trouble figuring out exactly what the street number was. He did, as opposing counsel noted, eventually get a letter from his sister and was able to get in touch with his family. The record is not clear when exactly he obtained that letter or when exactly he connected with his family, but a motion to reopen before the BIA is typically a vehicle for, it's a purely fact-based motion for presenting new facts that are discovered since the hearing. And Escamilla was not attempting to present new facts. He was attempting to support a legal argument. Well, if he's got a letter, though, from a sister, all of a sudden there are things there that an I.J. could have considered that the I.J. would not have had before. That's not really a legal argument when you present a letter from your sister. I view it as a legal argument. His argument was that, you know, if he'd had more time, he would have been able to get evidence like this. It's not just this specific letter. Right. But at that point, he's got a letter. And he probably should have gone to the board and said, one, I've got a letter, let's reopen. And two, if I had additional time, now that I've got in touch with my sister, I've got access to a lot of other people as well. And I couldn't do that. And I would like to reopen. But that seems like those are arguments that are well placed to the board and are pretty tough when you just come straight here. Right. I mean, again, the record is unclear as to the timeline. We just we don't know. But I think, you know, he was saying, I need more time to, you know, to get everything together. And a single 11 day continuance for a pro se petition or a pro se applicant who is in detention and, you know, struggling with the limitations of detention was exceedingly short. So consistent with his duty to ensure the record was fully developed for the benefit of a pro se applicant, the immigration judge should have granted Escamilla more than 30, more than 34 days to gather evidence of his 34 years worth of ties. And because the removal proceeding did not comport with the requirements of due process, Escamilla asked the court to grant the petition for review. One last one last question. So we have we have sort of a series of hearings in which he's granted continuance. So sometimes we we we schedule something in order to see whether he's ready and then and then grant him additional time. But if he had said at any time in there, I've sent letters off or I've made phone calls, I'm waiting to hear back on those things. Is there any evidence that he told the IJ what his what his efforts were that he was hoping would bear fruit? He did at the April 11th hearing say that he had enlisted the help of his fellow detainees of other people who didn't know his family. Right. But to make phone calls on 411. Right. And I believe that's the only. But no, no evidence that he had sent letters off or that he had. So even even as to the address that he had, it didn't appear that he sent a letter. I don't think we can say one way or the other from the record. No, no evidence that he did. Right. Yes. We'd ask the court to grant the petition for review, vacate the BIA's decision and remand for a full and fair hearing. Thank you very much. Thank you. And thank you for doing this pro bono and your firm to Kirkland Ellis. Thank you. You're very welcome. OK. Escamilla Nunez is submitted.
judges: Wardlaw, Bybee, Bell